Albert NORMAN and Caroline Norman, Plaintiffs,

v.

GENERAL MOTORS CORP., Does I–V, and Black and White Corporation I–V, Defendants.

No. CV–R–84–453–ECR.

United States District Court, D. Nevada.

Feb. 12, 1986.

On Motion For Partial Summary Judgment Feb. 19, 1986.

Lawrence J. Semenza, Reno, Nev., for plaintiffs.

Robert Story, Reno, Nev., for defendants.

## ORDER

EDWARD C. REED, Jr., District Judge.

Defendant General Motors (GM) moves this Court pursuant to Fed.R.Civ.P. 12(c) for a judgment on the pleadings. Specifically, GM moves to dismiss plaintiff Albert Norman's Fourth Claim for Relief. Norman asserts as his fourth claim the tort of intentional infliction of emotional distress.

Norman alleges, in part, that after twelve years of employment, GM terminated him. At the time he was fired, Norman was a warehouse supervisor. Norman had been transferred to the Sparks warehouse from Oakland. Norman alleges that GM intended to create a situation in which Norman would be criminally implicated for drug trafficking.

Norman alleges that GM, as an employer who a long-term employee should be able to trust and who is in a position of power over that employee, did initiate the drug investigation. It is on this intentional act that Norman bases his claim for intentional infliction of emotional distress.

In considering a motion for judgment on the pleadings, this Court is required to view the facts presented in the pleadings and the inferences to be drawn from them in the light most favorable to the nonmoving party. There must be no unresolved issue of fact and no question that GM is entitled to judgment as a matter of law. *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 423 (9th Cir.1976); *Christensen v. United States*, 575 F.Supp. 735, 738 (D.Nev.1983).

In this diversity action we are required to decide questions of law as would the courts of Nevada. Accordingly, this Court must determine whether Nevada courts would conclude that it is proper to dismiss the Fourth Claim for Relief as legally insufficient to state a claim for the intentional infliction of severe emotional distress.

In order to recover for the intentional infliction of emotional distress, Norman must establish the following elements: (1) that GM's conduct was extreme and outrageous; (2) that GM either intended or recklessly disregarded the causing of emotional distress; (3) that Norman actually suffered severe or extreme emotional distress; and (4) that GM's conduct actually or proximately caused the distress. *See Nelson v. City of Las Vegas*, 99 Nev. 548, 555, 665 P.2d 1141, 1145 (1983).

Nevada relies upon the Restatement (Second) of Torts § 46 which recognizes the

tort of intentional infliction of emotional distress. It is for the trial court to determine whether the defendant's conduct is so extreme and outrageous as to permit recovery. Where reasonable people may differ, the jury is to decide if the conduct "has been significantly extreme and outrageous to result in liability." The outrageous or extreme conduct required may arise from abuse of a position or relationship which gives the actor actual or apparent authority over another. *See Breeden v. League Services Corp.*, 575 P.2d 1374, 1377 (Okl.1978).

■ GM first argues that Norman's allegations are deficient because he failed to allege the first element of the tort, that GM's conduct was extreme and outrageous. Norman has clearly alleged the other three elements. See Complaint at 7–8. Norman argues that his failure to term GM's conduct as "extreme and outrageous" is not fatal to his cause of action.

Liability exists where the "conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement 2d of Torts, § 46 Comment d (1965). Norman alleges and will no doubt attempt to prove that the extreme and outrageous conduct which caused Norman mental anguish or emotional distress was the initiation of a drug investigation. Although there is, no doubt, conflicting evidence on this question, Norman's complaint does present allegations that GM initiated the drug investigation of Norman with knowledge that Norman had not committed any offense or with reckless disregard of whether he had or not. These allegations seem sufficiently outrageous and, thus, raise a question on which reasonable persons may differ. *C.f. Selsnick v. Horton*, 96 Nev. 944, 946, 620 P.2d 1256, 1257 (1980) (absent allegations and proof of extreme and outrageous conduct it was error to give a jury instruction regarding damages for mental anguish absent physical injury).

In further support of its motion, GM asserts that Norman's allegation of intentional infliction of emotional distress is merely artful pleading because the gravemen of his complaint is wrongful discharge. GM maintains that any claim for intentional infliction of emotional distress is subsumed in his claim for wrongful termination. GM's argument relies upon *Magnuson v. Burlington Northern, Inc.*, 576 F.2d 1367 (9th Cir.), *cert. denied* 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978). GM's reliance is misplaced. The Ninth Circuit was not expressly examining the interplay between the two stated causes of action, rather the court found that the alleged basis for the intentional infliction of emotional distress was a "minor dispute" within the exclusive province of grievance mechanisms established by the Railway Labor Act. *Id.* at 1370. The court specifically addressed itself to the issue of congressional intention of providing a comprehensive federal scheme for the settlement of employer-employee disputes in the *railroad* industry, without resort to the courts. *Id.* at 1369. The court disallowed the separate state cause of action for intentional infliction of emotional distress because it was "inextricably intertwined" with labor law and the grievance machinery of the collective bargaining contract. *Id.*

In this case, Norman does not allege as a basis for his claim of intentional infliction of emotional distress that the termination constituted GM's only outrageous conduct, but rather that GM's initiation of a drug investigation constituted outrageous conduct. If GM in fact set up an employee of twelve years to attempt to implicate him on drug charges, this Court finds that as a matter of law Norman has alleged conduct which is outrageous. Thus, when the totality of the circumstances alleged by Norman are taken into account, this Court is of the opinion that Norman has alleged outrageous conduct by GM and the motion for judgment on the pleadings should be denied.

CONCLUSION

As observed in comment h to the Restatement (Second) of Torts, § 46, "It is for

the court to determine, in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so." The totality of GM's alleged conduct leads us to conclude that reasonable persons could differ on the question of whether there was outrageous conduct. This Court is mindful of the qualification to the definition of extreme and outrageous conduct that "[c]onduct, otherwise permissible, may become extreme and outrageous if it is an abuse by the actor of a position in which he has actual or apparent authority over the other, or the power to affect the other's interests." *Zalnis v. Thoroughbred Datsun Car Co.,* 645 P.2d 292 (Colo.App.1982). This qualification is applicable here and, after a close review of the facts and the applicable caselaw, the Court must conclude that Norman has identified conduct on the part of GM that meets the threshold requirements of the tort.

IT IS, THEREFORE, HEREBY ORDERED that the motion for judgment on the pleadings is DENIED.

### ON MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant General Motors (GM) moves this Court for partial summary judgment arguing that essential elements are missing from two of plaintiffs' claims for relief. GM argues (1) that Albert Norman's claim for defamation must fail because no publication occurred and (2) that Caroline Norman's claim for loss of consortium must fail because she was not married to Albert Norman. In opposition, Albert Norman asserts that sufficient facts exist to survive a summary judgment on whether GM did in fact publish the alleged defamatory material. Caroline Norman argues that a valid marriage is not an essential element for a claim of loss of consortium.

Summary judgment is only appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Ybarra v. Reno Thunderbird Mobile Home Village,* 723 F.2d 675, 677 (9th Cir.

1984). The evidence must be viewed in the light most favorable to the non-moving party. *Franklin v. Murphy,* 745 F.2d 1221, 1235 (9th Cir.1984). Further, in deciding this diversity case, this Court is bound to apply the law of the Nevada Supreme Court. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

GM first argues that although Norman's fifth claim for relief alleges that GM defamed him, discovery has revealed that Norman cannot prove publication, an essential element to any claim of defamation. GM asserts that Norman's interrogatory answers reveal a reliance on statements made by GM employees Mike Hutton and James Patterson to Albert Norman. GM further asserts that at Albert Norman's deposition Norman testified that only GM personnel were present when the alleged defamatory accusation of his "involvement with narcotics" (the alleged defamatory statement) was made and that employees of a corporation cannot "publish" to each other. In his opposition to the motion for summary judgment, Norman argues that he is not merely relying on the interview with GM personnel to support his defamation claim, but also relies on the distribution of Security Officer daily report, notes and memos to Gonyo of the police department and the Consolidated Narcotic Unit (CNU). Norman further asserts that distribution to non-interested GM employees support his assertion of publication.

To be actionable there must be a publication of the defamatory material. GM is correct that publication cannot occur when the communication is between officers, agents and employees of a corporation. *See Jones v. Golden Spike Corp.,* 97 Nev. 24, 27, 623 P.2d 970, 971 (1981). Thus, our inquiry would possibly have ended here if this were the only publication asserted. However, Norman also points to the distribution of alleged defamatory material to the CNU.

Mike Hutton admitted at his deposition that GM discussed Norman with the CNU. GM argues, however, that because the CNU requested the information, it cannot form the basis of any defamation claim.

However, Norman alleges in his complaint that GM's information initiated any investigation by the CNU. Although GM denies this, the allegations of Norman's complaint, absent competent contradicting evidence, must be accepted as true for the purposes of this motion. *International Union of Bricklayers v. Martin Jaska, Inc.,* 752 F.2d 1401, 1405 (9th Cir.1985). Thus, the release of information to the CNU may not have been privileged and may supply the necessary publication to Norman's defamation claim. Accordingly, the fifth claim for relief should not be dismissed.

■ GM next argues that plaintiff Caroline Norman cannot maintain a claim for loss of consortium because she was not married to Albert Norman at the time of his termination. In the sixth claim for relief, Caroline Norman asserts a loss of consortium based upon the alleged injuries suffered by Albert Norman. GM argues that Nevada would not recognize a loss of consortium claim for two cohabiting adults and, therefore, this Court should dismiss the sixth claim for relief.

There is no dispute in the facts that the Normans were not married at the time the alleged incidents took place which form the basis for this suit. There also is apparently no dispute that the Normans were, however, living together and continued to live together until and after their marriage on November 27, 1984.

The question presented before this Court is whether an essential element of a loss of consortium claim is proof of a valid marriage. The question has not been decided in Nevada, but, nevertheless, this Court must determine how the Nevada Supreme Court would decide the issue.

Nevada clearly recognizes a cause of action for married couples based upon a loss of consortium. *See General Electric Co. v. Bush,* 88 Nev. 360, 498 P.2d 366 (1972). The claim for consortium covers such "intangible interests as 'love, companionship, affection, society, sexual relations, solace and more.'" *Id.* at 367, 498 P.2d at 370 *quoting Millington v. Southeastern Elevator Co., Inc.,* 22 N.Y.2d 498, 293 N.Y. S.2d 305, 239 N.E.2d 897 (1968). While several state courts have explicitly refused to recognize a loss of consortium claim by an unmarried plaintiff, the courts which have recognized such a claim have been faced with a plaintiff who was a part of a significant and meaningful relationship. This Court finds that if faced with the question, the Nevada Supreme Court would not arbitrarily deny a claim for loss of consortium to a plaintiff who had been involved in a significant relationship.

In order to sustain a cause of action for loss of consortium, this Court finds that the burden is on Caroline Norman to demonstrate that her nonmarital relationship with Albert Norman was both stable and significant. Evidence of a stable and significant relationship can be demonstrated by the duration of the relationship, whether the parties have a mutual contract, the degree of economic cooperation and entanglement, exclusivity of sexual relations, and whether there is a family relationship with children. *See Grant v. Avis Rent-A-Car System, Inc.,* 158 Cal.App.3d 813, 204 Cal.Rptr. 869 (1984).

The only facts presented by competent evidence to support the significance of the pre-marital relationship is as follows. The Normans were married by a Justice of the Peace on November 27, 1984. First Interrogatory at 2. They have lived together since December 1981 and have held themselves out as husband and wife since March 1982. *See* Affidavit of Caroline and Albert Norman. By agreement, Albert Norman received an interest in insurance and employment benefits of Caroline Norman on March 9, 1982. *Id.* The Normans state that they have always intended to be and remain married for the rest of their lives. *Id.* Plaintiffs did not submit any additional evidence as to the significance and stability of their relationship.

Albert Norman was discharged from GM on December 31, 1983. Therefore, the Normans had been living together for two years and holding themselves out as husband and wife for approximately twenty-one months. It does not appear to this Court that even if a loss of consortium claim would be allowed for unmarried cohabitants, that the Normans have demon-

strated that the non-marital relationship was both stable and significant. *See e.g. Butcher v. Superior Court,* 139 Cal. App.3d 58, 108 Cal.Rptr. 503 (1983) (Eleven year relationship prior to accident supported a cause of action for loss of consortium by an unmarried cohabitant). In *Bulloch v. United States,* 487 F.Supp. 1078 (D.N.J.1980), the case relied on by the Normans, the plaintiffs had been married well over 20 years before divorcing. At the time of the accident, the Bullochs had been living together and planned on remarrying. They also had raised two children together. In contrast, the facts in the case before this Court simply do not support a loss of consortium claim for Caroline Norman. Even viewing all of the facts in the light most favorable to the Normans, as we must, no loss of consortium claim is appropriate as a matter of law. Thus, the sixth claim for relief should be dismissed. Accordingly, GM's motion for partial summary judgment should be denied in part and granted in part.

IT IS, THEREFORE, HEREBY ORDERED that summary judgment is *DENIED* as to Norman's fifth claim for relief and *GRANTED* as to Norman's sixth claim for relief.