Leonard F. Alcantara, Robert G. Frame, Cynthia Farias, Honolulu, Hawaii, for Peter Kiewit & Sons' Co.

Libkuman, Ventura, Rodney Nishida, Honolulu, Hawaii, for Calavar Corp.

John KIESEL and Ethel Kiesel, Plaintiffs,

v.

PETER KIEWIT & SONS' CO., Defendant and third-party plaintiff,

v.

CALAVAR CORP., Third-party defendant.

Civ. No. 85–0009 (In Admiralty).

United States District Court, D. Hawaii.

July 16, 1986.

## ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

FONG, Chief Judge.

Defendant's motion for partial summary judgment as to the claim for loss of consortium by plaintiff Ethel Kiesel came on for hearing before this court on June 16, 1986. Christopher McKenzie appeared on behalf of plaintiffs. Cynthia Farias appeared on behalf of defendant and third-party plaintiff Peter Kiewit & Sons' Co. Rodney Nishida appeared on behalf of third-party defendant Calavar Corp. The court, having considered the motion and the memoranda filed in support thereof and in opposition thereto, having heard the arguments of counsel, and being fully advised as to the premises herein, finds as follows:

### FACTS

The facts relating to this motion are not in dispute. Plaintiff John Kiesel has brought a suit in admiralty, alleging that he was injured while working in a man-lift which collapsed onto the deck of the *Thelma,* a clam-shell dredge owned by defendant Peter Kiewit & Sons' Co. ("Kiewit"). Kiewit has filed a third-party complaint against Calavar Corp., the manufacturer of the man-lift involved in the accident. Plaintiff Ethel Kiesel, John Kiesel's common-law wife of some 20 years' standing, has filed a claim for loss of consortium.

The sole issue before this court is whether defendant is entitled to partial summary judgment as to Ethel Kiesel's claim, on the grounds that general maritime law affords no recovery for loss of consortium when the claimant was not married to the injured person at the time of the accident.

## DISCUSSION

 The spouse of an injured seaman may assert a cause of action for loss of consortium under general, as opposed to statutory, maritime law. *American Export Lines v. Alvez*, 446 U.S. 274, 100 S.Ct. 1673, 64 L.Ed.2d 284 (1980). Although the federal courts themselves are responsible for developing the law in this area, they must look to the legislative and judicial will of the states in order to determine the position of the various jurisdictions. A general trend in the common or statutory law of the states will influence the shaping of the federal common law. Consequently, in general maritime law, one will not find "six or seven hundred different causes of action created whimsically by six or seven hundred different federal district judges." *Gunter v. Marine Offshore Catering Co., Inc.*, 617 F.Supp. 1018, 1020 (W.D.La.1985). Because federal courts are required to identify a trend among the states before applying a rule to general maritime law, district courts sitting in admiralty usually do not engage in the formulation of novel theories.

Plaintiffs in this case remark that admiralty courts have exhibited an "enlightened" attitude in recognizing that "it better becomes the humane and liberal character of proceedings in admiralty to give than to withhold the remedy, when not required to withhold it by established and inflexible rules." *American Export Lines, supra*, 446 U.S. at 281–82, 100 S.Ct. at 1677. A federal court sitting in admiralty may also take into account state law that is not inconsistent with "the characteristic features of the maritime law." *Just v. Chambers*, 312 U.S. 383, 61 S.Ct. 687, 85 L.Ed. 903 (1941).

Nevertheless, admiralty courts are not free to create remedies at will. Plaintiffs bear the burden of demonstrating that the remedy they seek is one given widespread recognition by the states. This court is not persuaded that the weight of authority backs plaintiffs' ultimate position in this instant case.

Plaintiffs argue preliminarily that Hawaii courts would permit a cause of action for loss of consortium, even when two individuals are not married, so long as they can demonstrate a cohabitative, "stable and significant" relationship. This court does not share plaintiffs' enthusiasm as to the likely liberality of the state courts. Hawaii law provides that "it shall in no case be lawful for any person to marry in the State without a license for that purpose duly obtained from the agent appointed to grant marriage licenses." Hawaii Rev.Stat. § 572–1(6).

Plaintiffs admit that theirs is a common-law marriage. Such marriages are invalid in Hawaii. Hawaii Rev.Stat. § 572–1(6); *Parke v. Parke*, 25 Haw. 397 (1920); Opinion No. 73–5, Hawaii Attorney General. Accordingly, it is likely that a claim for consortium, which is a derivative action historically arising specifically from the marital relationship, *see Towse v. State*, 64 Haw. 624, 647 P.2d 696 (1982); *Yamamoto v. Premier Ins. Co.*, 4 Haw.App. 429, 435, 668 P.2d 42 (1983), would not be countenanced in an ordinary civil suit by a state, such as Hawaii, which does not recognize the validity of the plaintiffs' marriage.

The court's research has revealed no Hawaii opinion addressing this particular issue. Indeed, Hawaii courts have not even stated whether a legitimate spouse may maintain an action for consortium when the other spouse sustains injury immediately prior to their valid marriage. However, the Hawaii intermediate court of appeals, without entering any finding, has indicated surprise that a spouse would attempt to do so. *See Alt v. Krueger*, 4 Haw.App. 201, 202 n. 1, 663 P.2d 1078 (1983) ("David is a plaintiff in this action, apparently seeking damages for lost [sic] of consortium, al-

though he and Adrienne were not married until after the ... accident"). Consequently, this court must conclude that Hawaii has expressed no intention of adopting the position that an individual may sue for loss of consortium arising from injury to a fiancee later wed.

Whatever the position of Hawaii in this matter, however, it is clear that general maritime law does not permit the spouse of a seaman injured prior to marriage to maintain a cause of action for loss of consortium. *Gunter, supra,* 617 F.Supp. at 1019. The inequity of allowing an individual to "marry into" a cause of action has led a majority of jurisdictions to disallow claims for loss of consortium which accrue prior to marriage, no matter how soon afterward the wedding was scheduled to take place, or indeed actually occurred. *See, e.g., Curry v. Caterpillar Tractor Co.,* 577 F.Supp. 991, 993 (E.D.Pa.1984); *Clifford v. White,* 562 F.Supp. 387 (W.D.Mo.1983); *Wagner v. International Harvester Co.,* 455 F.Supp. 168 (D.Minn.1978); *Childers v. Shannon,* 183 N.J.Super. 591, 444 A.2d 1141 (1982); *Sawyer v. Bailey,* 413 A.2d 165 (Me.1980); and cases cited in Annot., 5 A.L.R.4th 300 (1981).

The only reported opinion allowing loss of consortium recovery for injury to a fiance is *Sutherland v. Auch Inter-Borough Transit Co.,* 366 F.Supp. 127 (E.D.Pa.1973) (spouse injured one month before wedding; recovery only from date of wedding). That case has been roundly criticized and was expressly rejected by a subsequent Pennsylvania state court case. *See Rockwell v. Liston,* 71 Pa. D & C 2d 756 (C.P. Fayette Cty.1975), *cited in Curry, supra* at 993.

Furthermore, plaintiffs have identified only two decisions holding that cohabitants, as opposed to betrotheds, may recover for loss of consortium. *Bulloch v. United States,* 487 F.Supp. 1078 (D.N.J.1980), involved a divorced couple (legally married for 20 years) who reconciled immediately prior to the injury; they had not remarried at the time they brought suit, and indeed they were not even cohabiting at the time of the accident. *Butcher v. Superior Court of Orange County,* 139 Cal.App.3d 58, 188 Cal.Rptr. 503 (1983), concerned a couple who had cohabited for 11 years. In both cases the courts found that a "stable and significant" relationship, equivalent to marriage, had been established between the plaintiffs. Accordingly, the courts held that the rationale underlying awards for loss of consortium had been met, despite the lack of a valid marriage in either case.

In addition, this court's research has uncovered another opinion, *Norman v. General Motors Corp.,* 628 F.Supp. 702 (D.Nev.1986), which predicts, without reference to any authority, that Nevada would recognize such a cause of action on the part of a common-law spouse. The *Norman* court held that Nevada law requires application of the "stable and significant test" to consortium claims in the absence of a valid marriage; however, under the facts of the case before it, the court found insufficient evidence as to the nature of the plaintiffs' relationship.

Because the *Norman* case is quite recent, it has not yet drawn any commentary. Both *Butcher* and *Bulloch,* however, have met with sharp criticism, and this court believes that *Norman* will share a similar fate. The court in *Childers v. Shannon, supra,* while dismissing as impractical the "stable and significant" test of *Bulloch,* noted in exasperation that the "marriage [certificate] is the only dependable means by which a relationship—of which consortium is an element—may be defined." 444 A.2d at 1142. As a California appellate court has complained, "the *Butcher* court's own definition invites mischief and inconsistent results." *Ledger v. Tippitt,* 164 Cal.App.3d 625, 210 Cal.Rptr. 814, 820 (1985). The court in *Weaver v. G.D. Searle & Co.,* 558 F.Supp. 720, 723 (N.D.Ala.1983), called the *Butcher* test "so difficult as to be impossible in the real world."

Indeed, the lack of adequate legal criteria for distinguishing "stable and significant" relationships from those which present an insufficient basis on which to rest an award for loss of consortium militates against facile acceptance of such a

test. This court agrees with the reasoning in *Weaver*. Hawaii law dictates that a valid marriage is indispensable to an action for lack of consortium. If modern social conditions are to mandate a different result, it must come from the legislature or the state courts. *See* 558 F.Supp. at 724. Where the Legislature has spoken, even if only by refusing to recognize common law marriage in Hawaii, this court will not impose a contrary result.

Plaintiffs argue that Hawaii has a particular interest in protecting "spouse-like relationships." They point out that Mrs. Kiesel, even in the absence of a valid marriage license, might recover for wrongful death (Hawaii Rev.Stat. § 663–3), emotional distress (*Leong v. Takasaki*, 55 Haw. 398, 520 P.2d 758 [1974]), or property division (*Fung Dai Kim Ah Leong v. Lau Ah Leong*, 27 F.2d 582 (9th Cir.1928); *Artiss v. Artiss*, 82 Haw.Leg.Rep. 820253 [1st Cir. Ct.1982]) arising from her relationship with Mr. Kiesel. Nevertheless, the fact that the Legislature and the courts have given some rights to a person in Mrs. Kiesel's position does not necessarily suggest that Hawaii is prepared to extend the additional right—recovery for loss of consortium—to an unmarried person, solely to protect "relational interests."

Plaintiffs ultimately contend that "the recognition of a cause of action for loss of consortium should not be based solely on whether the family unit fortuitously possesses a marriage certificate at the time of injury." Unfortunately for plaintiffs, the state of the law in an overwhelming majority of the jurisdictions which have considered the issue seems to be exactly that against which plaintiffs argue. Accordingly, this court has no basis for accepting plaintiffs' contention that Hawaii courts would permit Ethel Kiesel to maintain an action for loss of consortium.

Moreover, because this court hears the instant case pursuant to its admiralty jurisdiction, and not through diversity, the law of the state where the injury occurred is not controlling. Of greater relevance is whether the majority of states has adopted a given rule of law, such that the general maritime law is likely to fall into line with the majority position. Plaintiffs purport to identify such a trend, allowing unmarried cohabitants to recover for loss of consortium, in the *Bulloch, Butcher,* and *Sutherland* cases. This court finds, nevertheless, that the only discernible "trend" which has developed in recent years in this area is the allowance of recovery for intangible elements in domestic relations, rather than merely for lost "services." *See General Electric Co. v. Bush*, 88 Nev. 360, 498 P.2d 366, 370 (1972).

As this court has already noted, the opinions relied upon by plaintiffs have hitherto met with almost universal scorn. At the present time, it does not appear to this court that the common law has developed to such a point that loss of consortium claims by unmarried cohabitants would be accepted throughout the United States. Furthermore, the undesirability of requiring federal courts, sitting in admiralty, to investigate minutely the nature of domestic relationships simply in order to ascertain "significance" and "stability" is self-evident.

Of necessity, the general federal maritime law lags slightly behind the common law of the individual states. Where the general state of the common law is itself far from settled, a federal district court sitting in admiralty should not be quick to apply a questionable legal proposition to the general maritime law. Because this court is persuaded that neither Hawaii nor the majority of other jurisdictions has indicated a willingness to permit the type of claim raised by Mrs. Kiesel, summary judgment in defendant's favor as to that claim, as made under the general maritime law, is appropriate. Accordingly, IT IS HEREBY ORDERED that the motion for partial summary judgment as to the loss of consortium claim be, and the same is, GRANTED.