[No. 18296-0-I.   Division One.   February 18, 1987.]

KATHRYN ROE, *Individually and as Personal Representative, Appellant,* v. LUDTKE TRUCKING, INC., ET AL, *Respondents.*

*Mary Swenson, Hal Thurston,* and *Simonarson, Visser, Zender, Brandt & Thurston,* for appellant.

*John Patrick Cook, Timothy A. Reid,* and *Lee, Smart, Cook, Martin & Patterson,* for respondents.

COLEMAN, J.—This case presents an issue of first impression in this jurisdiction: Does an unmarried person have a cause of action for loss of consortium when his or her cohabitant is killed by a third party tortfeasor? Because we find that the wrongful death statute does not encompass such an action, we answer this question in the negative.

On June 10, 1983, Stephen Tibbetts was killed when his car was struck by a logging truck owned and operated by respondents. At the time of his death, Tibbetts had lived for 13 years with Kathryn Roe. Although they were not married, it is undisputed that they shared a long–term, stable, and marital–like relationship.

On June 19, 1985, Kathryn Roe filed suit against the respondents for the wrongful death of Stephen Tibbetts. As personal representative, she alleged that the negligent acts of the respondents had damaged Tibbetts' estate. Roe also alleged in her individual capacity that because of Tibbetts' death, she had suffered severe pain and suffering, emotional distress, loss of consortium, loss of comfort and companionship, loss of emotional support, and loss of love and felicity.

The trial court granted summary judgment on the issue of liability, determining that the respondents were jointly and severally liable for the death of Stephen Tibbetts. The trial court dismissed the individual claims of Kathryn Roe, however, holding that she had neither a statutory nor a common law cause of action apart from her claims as personal representative of Tibbetts' estate.

We first address Roe's contention that she has a cause of action under the wrongful death statute for damages for loss of consortium. Under our wrongful death statute,[1] a decedent's personal representative may sue to recover loss of consortium damages. *Ueland v. Pengo Hydra–Pull Corp.*, 103 Wn.2d 131, 134, 691 P.2d 190 (1984); *Hinton v. Carmody,* 182 Wash. 123, 130–32, 45 P.2d 32 (1935). The action, however, may be maintained only on behalf of the beneficiaries designated in the statute. RCW 4.20.020;[2] *Wood v. Dunlop,* 83 Wn.2d 719, 521 P.2d 1177 (1974). Thus, loss of consortium damages are recoverable under the wrongful death statute only if they are suffered by a statutory beneficiary.

It is undisputed that Roe is not legally Tibbetts' wife. Roe argues, however, that under a liberal construction of the statute, she fits within the statutory category of "wife" because of the nature of her relationship with Tibbetts. Respondents dispute Roe's construction of the statute. They argue that the wrongful death statute should be strictly construed when determining the beneficiaries of an

---

[1]RCW 4.20.010 provides:

"When the death of a person is caused by the wrongful act, neglect or default of another his personal representative may maintain an action for damages against the person causing the death . . ."

[2]RCW 4.20.020 provides:

"Every such action shall be for the benefit of the wife, husband, child or children, including stepchildren, of the person whose death shall have been so caused. If there be no wife or husband or such child or children, such action may be maintained for the benefit of the parents, sisters or brothers, who may be dependent upon the deceased person for support, and who are resident within the United States at the time of his death."

action and then liberally construed only when applying the statute in favor of those beneficiaries.

Respondents cite the correct rule of construction, *i.e.,* a liberal construction of the statute is appropriate only after the beneficiaries have been determined. *Whittlesey v. Seattle,* 94 Wash. 645, 647, 163 P. 193 (1917). Appellant is correct in pointing out, however, that in certain circumstances, our court has extended the scope of the statute beyond its literal meaning to protect a beneficiary clearly contemplated by the statute. *See Armijo v. Wesselius,* 73 Wn.2d 716, 440 P.2d 471 (1968) (construing word "child" in wrongful death statute to include an illegitimate child); *see also Wilson v. Lund,* 74 Wn.2d 945, 447 P.2d 718 (1968) (permitting divorced mother to maintain action under RCW 4.24.010 for the wrongful death of her child).

In the present case, we need not dwell on the distinctions between various rules of construction. Even if the statute were liberally construed, Roe could not be considered Tibbetts' wife. In Washington, a marriage can be created only by compliance with the statutory provisions. *Meton v. Industrial Ins. Dep't,* 104 Wash. 652, 655, 177 P. 696 (1919). Since the term "wife" is not defined in the statute, it should be given its plain and ordinary meaning, *Hewson Constr., Inc. v. Reintree Corp.,* 101 Wn.2d 819, 826, 685 P.2d 1062 (1984), which may be determined by resort to dictionaries, *Fred J. Moore, Inc. v. Schinmann,* 40 Wn. App. 705, 711, 700 P.2d 754 (1985). *Webster's New Collegiate Dictionary* states, in the only definition of the word relevant here, that a "wife" is "a married woman". To include Roe within the statutory category of "wife" would require this court to read into the statute something clearly not intended by the Legislature.

Roe argues, however, that even if this court finds that she has no statutory cause of action, her claim may still be considered outside of the wrongful death statute as a common law cause of action. Resolution of this issue requires an understanding of the history of wrongful death actions.

At common law, no civil action could be maintained for

damages resulting from the death of a human being. *Baker v. Bolton,* 1 Camp. 493, 170 Eng. Rep. 1033 (K.B. 1808); *Hedrick v. Ilwaco Ry. & Nav. Co.,* 4 Wash. 400, 30 P. 714 (1892). In response to the common law rule, every state passed a statute which in some way provided for recovery for wrongful death. J. Stein, *Damages and Recovery* § 233, at 483 (1972).

Even after passage of the wrongful death statutes, situations inevitably arose where a party clearly injured by the wrongful death of another was left without a cause of action because the claim fell outside the wrongful death statute. In *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 26 L. Ed. 2d 339, 90 S. Ct. 1772 (1970), the United States Supreme Court addressed such a situation. In *Moragne,* a longshoreman was killed aboard a ship within the territorial waters of Florida. The longshoreman's widow sued the owner of the ship for the wrongful death of her husband, alleging that the vessel was unseaworthy. The trial court dismissed the unseaworthiness claim because maritime law provided no recovery for wrongful death within a state's waters, and Florida's wrongful death statute did not encompass unseaworthiness as a basis of liability.

After examining the historical basis for the rule that there was no common law cause of action for wrongful death, the *Moragne* Court concluded that the rule had no satisfactory justification. Noting that the proliferation of wrongful death statutes indicated that there was no present public policy against allowing recovery for wrongful death, the Court recognized a common law remedy for wrongful death under general maritime law.

Only a few states, however, have been willing to follow *Moragne* and recognize a common law action for wrongful death. *Gaudette v. Webb,* 362 Mass. 60, 284 N.E.2d 222 (1972) (although statutory limitation period for bringing wrongful death claim had expired, beneficiaries had common law cause of action under which limitation period was tolled during claimant's minority); *see also Summerfield v. Superior Court,* 144 Ariz. 467, 473, 698 P.2d 712, 718 (1985)

(court holds that wrongful death "statute and precedent have combined to produce a cause of action with common law attributes"); *Haakanson v. Wakefield Seafoods, Inc.,* 600 P.2d 1087 (Alaska 1979) (court indicates in dicta that it would be willing to follow *Moragne* and *Gaudette*); *Barnette v. Butler Aviation Int'l, Inc.,* 89 Misc. 2d 350, 391 N.Y.S.2d 348 (1977) (court recognizes common law action for wrongful death; later disapproved in *Beninati v. Oldsmobile Div. of Gen. Motors,* 94 Misc. 2d 835, 405 N.Y.S.2d 917 (1978)).

Our State Supreme Court has rejected the argument that a common law cause of action may lie for wrongful death. In *Huntington v. Samaritan Hosp.,* 101 Wn.2d 466, 680 P.2d 58 (1984), the court addressed the same issue presented in *Gaudette, i.e.,* whether the limitation period for bringing a wrongful death cause of action is tolled by the minority of the statutory beneficiaries. Our court held that the limitation period was not tolled and distinguished *Gaudette* and other cases which had held to the contrary.

> Other courts have held that a wrongful death action is a common law cause of action with respect to which the statute of limitations is tolled during the claimant's minority. *E.g., Barnette v. Butler Aviation Int'l, Inc.,* 89 Misc. 2d 350, 391 N.Y.S.2d 348 (1977); *Gaudette v. Webb,* 362 Mass. 60, 284 N.E.2d 222 (1972); *but see Beninati v. Oldsmobile Div. of Gen. Motors,* 94 Misc. 2d 835, 405 N.Y.S.2d 917 (1978). In contrast, we have held wrongful death actions are strictly statutory and were unknown at common law. *See Whittlesey v. Seattle,* 94 Wash. 645, 163 P. 193 (1917).

*Huntington,* at 470 n.1. *Huntington* indicates that our Supreme Court has joined the overwhelming number of jurisdictions that have refused to recognize a common law supplement to the statutory cause of action for wrongful death. *See, e.g., Hebert v. Hebert,* 120 N.H. 369, 415 A.2d 679 (1980); *Justus v. Atchison,* 19 Cal. 3d 564, 565 P.2d 122, 139 Cal. Rptr. 97 (1977); *Short v. Flynn,* 118 R.I. 441, 374 A.2d 787 (1977). Any change in the status of the law in Washington concerning a loss of consortium claim in the

822

context of an action for wrongful death[3] must come from the Legislature or from our Supreme Court.

The judgment of the trial court is affirmed.

SCHOLFIELD, C.J., and PEKELIS, J., concur.

---

[3]We do not decide whether a common law claim for loss of consortium damages would lie when the injury does not result in the death of the cohabitant. We note that a few courts have looked favorably on such a cause of action when the relationship between the parties is stable and significant. *Butcher v. Superior Court,* 139 Cal. App. 3d 58, 188 Cal. Rptr. 503 (1983). *See also Norman v. General Motors Corp.,* 628 F. Supp. 702, 706 (D. Nev. 1986) (predicting that "Nevada Supreme Court would not arbitrarily deny a claim for loss of consortium to a plaintiff who had been involved in a significant relationship"); *Grant v. Avis Rent–a–Car Sys.,* 158 Cal. App. 3d 813, 204 Cal. Rptr. 869 (1984) (court does not reject *Butcher* but finds that relationship was not stable and significant); *Bulloch v. United States,* 487 F. Supp. 1078 (D.N.J. 1980) (holding that cause of action lies under New Jersey law; later rejected by *Childers v. Shannon,* 183 N.J. Super. 591, 444 A.2d 1141 (1982)). The vast majority of jurisdictions, however, have refused to recognize that any cause of action lies for cohabitants. *See, e.g., Kiesel v. Peter Kiewit & Sons' Co.,* 638 F. Supp. 1251 (D. Hawaii 1986) (no cause of action under general maritime law); *Lewis v. Hughes Helicopter, Inc.,* 175 Cal. App. 3d 403, 220 Cal. Rptr. 615 (1985), *review granted,* 713 P.2d 790, 223 Cal. Rptr. 122 (1986); *Briggs v. Julia L. Butterfield Mem. Hosp.,* 104 A.D.2d 626, 479 N.Y.S.2d 758 (1984); *Laws v. Griep,* 332 N.W.2d 339 (Iowa 1983); *Weaver v. G.D. Searle & Co.,* 558 F. Supp. 720 (N.D. Ala. 1983); *Haas v. Lewis,* 8 Ohio App. 3d 136, 456 N.E.2d 512 (1982).