[No. 61811-3-I.   Division One.   February 6, 2012.]

TAMMY BENNETT, *Individually and as Personal Representative, Appellant,* v. SEATTLE MENTAL HEALTH ET AL., *Respondents.*

478

*David P. Moody, Anthony D. Shapiro,* and *Martin D. McLean* (of *Hagens Berman Sobol Shapiro LLP*), for appellant.

*Pamela M. Andrews* and *Jenny M. Churas* (of *Andrews Skinner PS*), for respondents Seattle Mental Health and Meredith A. Fine.

*John T. Kugler* (of *Turner Kugler Law PLLC*), for respondent Albertson's Inc.

¶1 SCHINDLER, J. — Tammy Bennett sued Seattle Mental Health, Dr. Meredith A. Fine, and Albertsons Inc. for the wrongful death of her 26-year-old developmentally disabled son, Shawn Manning. Bennett challenges dismissal of her lawsuit for lack of standing under RCW 4.24.010. Bennett argues that parents of a developmentally disabled and legally incapacitated adult child should be treated in the same way as the parents of a minor child under the

wrongful death statute, RCW 4.24.010. In the alternative, Bennett asserts that RCW 4.24.010 is unconstitutional as applied to the parents of developmentally disabled and legally incapacitated adult children. Because Bennett did not have standing under RCW 4.24.010 to bring an action for the wrongful death of her 26-year-old developmentally disabled adult child, and the statute is not unconstitutional, we affirm.

## FACTS

¶2 Shawn Manning was born on July 27, 1978. When he was approximately 3 years old, Shawn was diagnosed with severe autistic disorder and mental retardation. Shawn lived with his mother, Tammy Bennett, and his stepfather, Curt Bennett. Because Shawn required more care than the Bennetts could provide, when Shawn was 14 years old, the State assumed responsibility for his care and he moved into a group home supervised by Service Alternatives of Washington (SAW).

¶3 When Shawn turned 18, he moved into an adult family home operated by SAW. Shawn was able to perform some daily functions and could bathe, dress, and eat by himself. However, difficulties with "cognition, language and behavior" limited Shawn's ability to live independently. The state Department of Developmental Disabilities contracts with SAW to provide services to developmentally disabled adults. The federal and state disability benefits that Shawn received were paid directly to SAW as the representative payee.

¶4 In October 1996, Tammy and Curt Bennett filed a petition for the legal guardianship of Shawn.[1] The petition states that Shawn is entitled to receive federal and state disability benefits that are paid directly to SAW for his care. In the petition, the Bennetts assert that Shawn has

---

[1] The Bennetts did not seek a guardianship of Shawn's estate.

the mental age of a five- to seven-year-old and will need assistance "indefinitely, due to ongoing disabilities." The report filed by the guardian ad litem appointed to represent Shawn states that the Bennetts filed the petition for guardianship in order to "oversee Shawn's medical care now that he has turned eighteen."

> As Shawn's parents, they wish to monitor Shawn's medical care and to be able to make decisions for him, as he is not capable of making informed decisions on his own.

The superior court entered an order appointing Tammy and Curt Bennett as the legal guardians for Shawn.

¶5 In 2000, Seattle Mental Health and Dr. Meredith Fine assumed responsibility as the primary medical treatment providers for Shawn. Dr. Fine prescribed medications for Shawn, including an antiseizure medication, Tegretol. SAW staff administered Shawn's medications and kept a log documenting dosage and frequency.

¶6 On October 21, 2004, SAW staff found Shawn lying unconscious on the floor of his bedroom. The staff immediately administered CPR[2] and contacted the emergency medical treatment (EMT) providers. Within minutes of arrival, the EMT providers pronounced Shawn dead. Shawn was 26 years old at the time of his death.

¶7 On December 19, 2007, Bennett filed a wrongful death action against Seattle Mental Health, Dr. Meredith Fine, and Albertsons. Bennett alleged that the health care providers breached the standard of care by negligently prescribing, administering, and supervising Shawn's medications. The complaint alleged that in August 2004, an Albertsons pharmacy refilled Shawn's prescription for Tegretol at a higher than required dosage, and that lowering the dosage approximately two months later resulted in his death.

¶8 Seattle Mental Health and Dr. Fine, and Albertsons filed motions for summary judgment dismissal of the law-

---

[2] Cardiopulmonary resuscitation.

suit. The defendants argued that (1) Bennett did not comply with the filing requirements of RCW 7.70.100 and (2) Bennett did not have standing to bring a claim for damages under the child wrongful death statute, RCW 4.24.010. The court granted summary judgment and dismissed Bennett's lawsuit.

¶9 On appeal, we followed the decision in *Waples v. Yi*, 146 Wn. App. 54, 189 P.3d 813 (2008), and affirmed dismissal of the lawsuit for failure to comply with the filing requirements of RCW 7.70.100(1). *Bennett v. Seattle Mental Health*, 150 Wn. App. 455, 208 P.3d 578 (2009).

¶10 In *Waples v. Yi*, 169 Wn.2d 152, 234 P.3d 187 (2010), the Washington Supreme Court held that the filing requirements in RCW 7.70.100(1) were unconstitutional. The court then remanded in light of *Waples*. *Bennett v. Seattle Mental Health*, 169 Wn.2d 1029, 241 P.3d 1220 (2010). We scheduled oral argument to allow the parties to address whether the trial court erred in concluding Bennett did not have standing to bring an action under RCW 4.24.010 for the wrongful death of her legally incapacitated and developmentally disabled adult child.

## ANALYSIS

¶11 Bennett argues that parents of developmentally disabled adult children, "especially those recognized as incapacitated by the courts," should be treated the same as the parents of a minor child for purposes of the child wrongful death statute, RCW 4.24.010.

¶12 The interpretation and meaning of a statute is a question of law subject to de novo review. *State v. Keller*, 143 Wn.2d 267, 276, 19 P.3d 1030 (2001). The goal of statutory interpretation is to discern and carry out legislative intent. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 6, 721 P.2d 1 (1986). To determine legislative intent, we first look to the language of the statute. We must give meaning to every word in a statute. *In re Recall of Pearsall-*

*Stipek*, 141 Wn.2d 756, 767, 10 P.3d 1034 (2000). Absent ambiguity, a statute's meaning is derived from the language of the statute and we must give effect to that plain meaning as an expression of legislative intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). If the meaning of a statute is plain on its face, the inquiry ends. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). A statute is ambiguous if susceptible to two or more reasonable interpretations. *Armendariz*, 160 Wn.2d at 110. However, a statute is not ambiguous merely because of different conceivable interpretations. *Armendariz*, 160 Wn.2d at 110.

¶13 Because a cause of action for wrongful death was not recognized at common law, a wrongful death action is strictly statutory. *Atchison v. Great W. Malting Co.*, 161 Wn.2d 372, 381, 166 P.3d 662 (2007).

> The "courts of this state have long and repeatedly held, causes of action for wrongful death are strictly a matter of legislative grace and are not recognized in the common law." *Tait[ v. Wahl]*, 97 Wn. App. [765,] 771[, 987 P.2d 127 (1999)]. The legislature has created a comprehensive set of statutes governing who may recover for wrongful death and survival, and there is no room for this court to act in that area. *Windust v. Dep't of Labor & Indus.*, 52 Wn.2d 33, 36, 323 P.2d 241 (1958). "It is neither the function nor the prerogative of courts to modify legislative enactments." *Anderson v. City of Seattle*, 78 Wn.2d 201, 202, 471 P.2d 87 (1970).

*Philippides v. Bernard*, 151 Wn.2d 376, 390, 88 P.3d 939 (2004).

¶14 RCW 4.24.010 governs actions by parents for damages for the wrongful death of a child. The child wrongful death statute applies only to the beneficiaries " 'clearly contemplated by the statute.' " *Masunaga v. Gapasin*, 57 Wn. App. 624, 631, 790 P.2d 171 (1990) (nondependent parents of an adult child are not contemplated by the statute) (quoting *Roe v. Ludtke Trucking, Inc.*, 46 Wn. App. 816, 819, 732 P.2d 1021 (1987) (cohabitant of decedent not "wife" within mean-

ing of RCW 4.20.020)). RCW 4.24.010 allows parents to sue for damages for the wrongful death of a minor child and the death of an adult child if the parents are dependent on the adult child for support. Under RCW 4.24.010, a parent of a minor child may bring a cause of action for wrongful death if the parent has provided emotional, psychological, or financial support for the child. *Philippides*, 151 Wn.2d at 384. But the parent of an adult child can bring a wrongful death action under RCW 4.24.010 only if the parent is dependent on the adult child for financial support. *Philippides*, 151 Wn.2d at 386. RCW 4.24.010 provides, in pertinent part:

> A mother or father, or both, who has regularly contributed to the support of his or her minor child, and the mother or father, or both, *of a child on whom either, or both, are dependent for support* may maintain or join as a party an action as plaintiff for the injury or death of the child.
>
> . . . .
>
> In such an action, in addition to damages for medical, hospital, medication expenses, and loss of services and support, damages may be recovered for the loss of love and companionship of the child and for injury to or destruction of the parent-child relationship in such amount as, under all the circumstances of the case, may be just.[3]

¶15 The "dependent for support" language was added in 1927 and has not changed since then. *See* LAWS OF 1927, ch. 191, § 1. It is well established that "dependent for support" under RCW 4.24.010 means financial dependence. *Masunaga*, 57 Wn. App. at 628. A parent need not be wholly dependent on an adult child, but dependence must be substantial. *Masunaga*, 57 Wn. App. at 628.

¶16 In four consolidated cases, the Supreme Court in *Philippides* addressed the question of whether the parent of an adult child could recover damages under RCW 4.24.010 if the parent was not financially dependent on the adult

---

[3] (Emphasis added.)

child. *Philippides*, 151 Wn.2d at 383. The plaintiffs argued that the legislature's decision to add an intent section explicitly stating that the " 'legislature intends to provide a civil cause of action for wrongful injury or death of a minor child to a mother or father' " if the parents were significantly involved in the child's life, " 'including but not limited to, emotional, psychological, or financial support,' " also applied to wrongful death actions brought by parents of adult children.[4] *Philippides*, 151 Wn.2d at 384 (quoting LAWS OF 1998, ch. 237, § 1). Because the plain language of the intent section is "limited to minor children," the court rejected the plaintiffs' argument and held that "RCW 4.24.010 requires that parents be financially dependent on an adult child in order to recover for that child's injury or death." *Philippides*, 151 Wn.2d at 388.[5]

¶17 Bennett does not dispute that Shawn was 26 years old when he died and she was not dependent on him for financial support. Bennett contends that Shawn should be considered a minor child for purposes of the statute and argues that as a legally incapacitated adult, Shawn had none of the rights of an adult and he, therefore, could not provide financial support.

¶18 RCW 4.24.010 does not define "minor child." However, courts have held that the age of majority as defined by RCW 26.28.010 applies to RCW 4.24.010. *Burt v. Ross*, 43 Wn. App. 129, 131, 715 P.2d 538 (1986). RCW 26.28.010

---

[4] The legislature amended RCW 4.24.010 in 1998 and added an intent section. The intent section states:

> It is the intent of this act to address the constitutional issue of equal protection addressed by the Washington state supreme court in *Guard v. Jackson*, 132 Wn.2d 660 (1997). The legislature intends to provide a civil cause of action for wrongful injury or death of a minor child to a mother or father, or both, if the mother or father has had significant involvement in the child's life, including but not limited to, emotional, psychological, or financial support.

LAWS OF 1998, ch. 237, § 1.

[5] Contrary to Bennett's assertion that none of the descendents in *Philippides* were developmentally disabled and legally incapacitated adult children, one of the adult children had cerebral palsy and lived with his parents and another adult child was diagnosed with schizophrenia. *Philippides*, 151 Wn.2d at 382.

provides, in pertinent part, that "[e]xcept as otherwise specifically provided by law, all persons shall be deemed and taken to be of full age for all purposes at the age of eighteen years."

¶19 Bennett points to no authority in support of her argument that a developmentally disabled and legally incapacitated adult child over the age of 18 is a minor for purposes of the child wrongful death statute. We note that where the legislature intends to include mentally incompetent or disabled persons in the same category as minors, it has done so explicitly. RCW 4.16.190(1) (tolling the statute of limitations while a person is under the age of 18 years, or incompetent or disabled to such a degree that he or she cannot understand the nature of the proceedings); RCW 5.60.030 (regarding competency of witnesses). To interpret RCW 4.24.010 to treat parents of developmentally disabled and legally incapacitated adult children the same as parents of a minor child would greatly expand the statutory beneficiaries entitled to bring a wrongful death action under RCW 4.24.010. Such a significant change to the child wrongful death statute must come from the legislature. *Philippides*, 151 Wn.2d at 390. We also note that in 2008, the legislature considered and rejected, based on significant cost, expanding the potential beneficiaries in RCW 4.24.010 to include parents who were not financially dependent on their adult children. *See also* H.B. REP. on Engrossed Substitute H.B. 1873, at 5, 60th Leg., Reg. Sess. (Wash. 2008) (noting also that the legislature heard public testimony that the amendments were "important for people with disabilities").

¶20 In the alternative, Bennett argues that if she does not have standing under RCW 4.24.010 because she was not financially dependent on Shawn, RCW 4.24.010 is unconstitutional as applied to parents of adult children with developmental disabilities. Bennett asserts that because there is no rational basis for treating parents of minor children and parents of legally incapacitated and develop-

mentally disabled adult children differently, RCW 4.24.010 violates the Fourteenth Amendment to the United States Constitution and article I, section 12 of the Washington State Constitution.[6]

¶21 A statute is presumed constitutional, and Bennett carries a heavy burden of proof. *Cosro, Inc. v. Liquor Control Bd.*, 107 Wn.2d 754, 760, 733 P.2d 539 (1987). "[T]his court will construe a statute as constitutional if at all possible." *Philippides*, 151 Wn.2d at 391. As to whether there are reasonable grounds to distinguish between parents who are able to bring a wrongful death action from parents who are not, Bennett "must overcome a presumption that the classification is reasonable." *Philippides*, 151 Wn.2d at 391-92.

¶22 Because RCW 4.24.010 does not employ a suspect classification or implicate a fundamental right, the standard of review is rational basis or minimal scrutiny. *Philippides*, 151 Wn.2d at 391. Under a rational basis standard, the court must determine:

> (1) [W]hether the legislation applies alike to all members of the designated class, (2) whether there are reasonable grounds to distinguish between those within and those without the class, and (3) whether the classification has a rational relationship to the purpose of the legislation.

*Philippides*, 151 Wn.2d at 391.

---

[6] The Fourteenth Amendment, section 1, of the United States Constitution provides:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Article I, section 12 of the Washington Constitution provides:

> No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations.

¶23 In *Masunaga*, this court held that there were reasonable grounds to distinguish between parents who were financially dependent upon an adult child and those who were not. *Masunaga*, 57 Wn. App. at 633.[7] We concluded that financially dependent parents are affected differently and more directly by that child's death than are nondependent parents. *Masunaga*, 57 Wn. App. at 633.

> The fact that nondependent parents, as well as siblings, friends, and acquaintances, suffer emotionally from a wrongful death does not render the statutory classification unreasonable for purposes of equal protection analysis.

*Masunaga*, 57 Wn. App. at 633.

¶24 The Washington Supreme Court in *Philippides* analyzed the constitutionality of the child wrongful death statute and whether the requirement that parents of adult children must be financially dependent under RCW 4.24-.010 violated the equal protection clause of the United States Constitution or the privileges and immunities clause of the Washington State Constitution. *Philippides*, 151 Wn.2d at 383. Under RCW 4.24.010, parents of adult children must be financially dependent on the adult child in order to bring a wrongful death action. But parents of minor children may bring a wrongful death action if that parent has been significantly involved, including emotional, psychological, or financial support of the minor child. *Philippides*, 151 Wn.2d at 381-82; *Masunaga*, 57 Wn. App. at 632.

¶25 Using rational basis scrutiny, the court concluded that RCW 4.24.010 did not violate the federal and state constitutions because the limitations placed on a parent's recovery are reasonably related to the purpose of compensating those parents most directly and significantly affected by the loss of a child. *Philippides*, 151 Wn.2d at 391-92. The

---

[7] Likewise, RCW 4.20.020 differentiates between beneficiaries and limits parents from bringing a wrongful death action unless the parent is "dependent upon the deceased person for support."

Supreme Court concluded there was a rational basis to distinguish between dependent and nondependent parents of adult children. "Obviously a parent who is dependent on a child for material well-being and the basic physical necessities of life is impacted in a way unlike an independent parent." *Philippides*, 151 Wn.2d at 392. Even where the parent is significantly involved in the life of an adult child, the court concluded there was a reasonable basis for treating parents of adult children differently from parents of a minor child because the parents of an adult child are not financially responsible after the child turns 18.

> The legislature does not require parents to support their adult children financially, or in any other way. Society does not hold parents responsible for the actions of their adult children. Many of the strictures binding children to their parents are released when the child reaches the age of majority. Therefore, there is a reasonable basis for the statute's treating the parents of adult children differently from parents of minor children.

*Philippides*, 151 Wn.2d at 393.

¶26 Bennett claims that because parents of legally incapacitated and developmentally disabled adult children remain legally responsible after the age of majority, there is no rational basis for treating them differently from the parents of minor children. The only authority Bennett cites in support of her argument is *Schultz v. Western Farm Tractor Co.*, 111 Wash. 351, 190 P. 1007 (1920). *Schultz* does not support Bennett's claim that Washington imposes financial obligations on parents with developmentally disabled adult children.

¶27 In *Schultz*, the court addressed the allocation of funds between a widow and the decedent's disabled son. *Schultz*, 111 Wash. at 352-54. The court held that allocating funds to the disabled son was appropriate because the decedent would have continued to support his son past the age of majority. *Schultz*, 111 Wash. at 354. But here, unlike in *Schultz*, the state and federal government assumed the

obligation to support Shawn and other individuals with developmental disabilities after the age of majority. RCW 71A.10.015. While Bennett remained actively involved in her son's life, she was not financially responsible for Shawn. There is no dispute the state and federal disability benefits paid for Shawn's care.

¶28 As to the question of whether the challenged classification has a rational relationship to the purpose of the legislation, Bennett must do more than merely question the wisdom of the statute. *Masunaga*, 57 Wn. App. at 633.

[A] legislative classification will be upheld unless it

rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.

*Masunaga*, 57 Wn. App. at 633 (quoting *McGowan v. Maryland*, 366 U.S. 420, 425-26, 81 S. Ct. 1101, 6 L. Ed. 2d 393 (1961)). Bennett cannot "show conclusively that the classification is contrary to the legislation's purposes." *Yakima County Deputy Sheriff's Ass'n v. Bd. of Comm'rs*, 92 Wn.2d 831, 836, 601 P.2d 936 (1979). As the Supreme Court states in *Philippides*, the limitations imposed on the parents of adult children are not contrary to the purpose of the statute.

The purpose of the child death/injury statute is to compensate parents for the loss of a child. The limitations placed on parents relate to the statute's attempt to compensate those parties most directly and significantly affected. While the lines drawn in RCW 4.24.010 will obviously preclude recovery for many parents devastated by the loss of an adult child, a statute is not unconstitutional for failing to "attack every aspect of a problem."

*Philippides*, 151 Wn.2d at 392[8] (quoting *Masunaga*, 57 Wn. App. at 634).

¶29 Under RCW 4.24.010, the parent of an adult child can bring a wrongful death action if the parent is financially dependent on the adult child, regardless of whether the adult child is legally incapacitated or developmentally disabled. Because financial dependence is a reasonable basis for determining whether a parent of an adult child can bring an action for the death of an adult child, we reject Bennett's constitutional challenge to RCW 4.24.010.

¶30 We affirm dismissal of Bennett's action under RCW 4.24.010 for the wrongful death of her 26-year-old developmentally disabled son.

LAU, J., concurs.

¶31 ELLINGTON, J. (concurring) — I concur. The majority thoroughly discusses and correctly construes the wrongful death and survival statutes. Actions for wrongful death of an adult child are not authorized in Washington unless brought by statutory beneficiaries who are dependent on the child for their financial support.

¶32 I write separately to urge that the legislature revise the statutes. A person injured by negligence has his or her own cause of action. In the case of death resulting from negligence, however, the statutes effectively immunize the negligent treatment of vulnerable adults, *so long as the negligence results in death.*

¶33 I have written on this issue before. In 2001, we decided *Schumacher v. Williams*, 107 Wn. App. 793, 805, 28 P.3d 792 (2001). Maria Schumacher had Down's syndrome. She lived in an adult boarding home. She was scalded to death. Like most vulnerable adults, Schumacher had no statutory beneficiaries because no one was dependent upon

---

[8] (Internal quotation marks omitted.)

her for financial support. Her brother's action for wrongful death was dismissed. I wrote separately, urging the legislature to amend the statutes.

¶34 Like Maria Schumacher, Shawn Bennett was developmentally disabled and could not care for himself. Like her, he died as a result of his caregivers' negligence. Like her, he has no statutory beneficiaries because no one depended upon him for financial support.

¶35 In both cases there is no liability for the negligence and, thus, no deterrence of future negligence and no incentive to improve care. Instead, the statutes essentially encourage fatal negligence in preference to mere injury. This result is irresponsible and unwise.

¶36 Another unfortunate aspect of these statutes was illuminated in *Tait v. Wahl*, 97 Wn. App. 765, 775-76, 987 P.2d 127 (1999). There, Mary Douglas, a woman who provided a home for her sister's children and grandchildren, was run down by a truck and killed. Ms. Douglas had cared for her niece, Amber Tait, and her niece's children from their births. Upon her death, they lost their home and financial security. But the statutes precluded any recovery because their relationship to Ms. Douglas was, by one degree, not close enough to qualify them as beneficiaries.

¶37 This result ignores the realities of modern life entirely and again immunizes negligence so long as it results in death.

¶38 But it is the legislature's job, not ours, to delineate the beneficiaries of statutory causes of action. And unwise distinctions do not, by themselves, render a statute unconstitutional.

¶39 As before, however, I urge the legislature to revise the statutes.

Review denied at 174 Wn.2d 1009 (2012).