# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ALTERNA AIRCRAFT V.B. LTD., | No. 86016-0-I |
| Respondent, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| SPICEJET LTD., | |
| Appellant. | |

FELDMAN, J. — In this appeal, we must decide, as a matter of first impression in Washington, whether a judgment creditor must show a basis for the exercise of personal jurisdiction over a judgment debtor before obtaining recognition of a foreign country money judgment under the Uniform Foreign-Country Money Judgments Recognition Act (the Uniform Act), chapter 6.40A RCW.

In a lawsuit in the United Kingdom, Alterna Aircraft V.B. Limited obtained a judgment (the Foreign Judgment) against SpiceJet Limited for more than $11M, plus litigation costs and postjudgment interest, arising out of SpiceJet's failure to pay Alterna for the rental of two aircraft. SpiceJet has not paid the Foreign Judgment. Alleging that "SpiceJet owns cognizable interests in personal property located in King County, Washington," Alterna filed a Petition for Recognition of Foreign-Country Money Judgment (the Petition) in the trial court below. In

response, SpiceJet filed a motion to dismiss for lack of personal jurisdiction under CR 12(b)(2). The trial court denied SpiceJet's motion and granted recognition of the Foreign Judgment.

SpiceJet argues the trial court erred in denying its motion to dismiss for lack of personal jurisdiction. Because the trial court correctly concluded that Alterna was not required to show a basis for the exercise of personal jurisdiction over SpiceJet in this recognition action under the Uniform Act, we affirm.

I

Alterna is an aircraft company incorporated in Ireland. SpiceJet is an airline incorporated in India. Alterna agreed to lease two aircraft to SpiceJet in June 2019. SpiceJet agreed to pay Alterna over $205,000 per month per aircraft under the terms of the leases. Alterna delivered the aircraft to SpiceJet in July 2019, and SpiceJet soon began to fall behind on monthly payments. After Alterna made written demands for payment, it terminated the leases on February 25, 2020. Alterna and SpiceJet attempted to resolve the outstanding payments and coordinate return of the aircraft in a series of agreements in 2020 and 2021. SpiceJet, however, did not return the aircraft on the agreed upon date in December 2021, causing it to be liable for all sums owed under the original agreements.

Alterna subsequently filed a civil action and motion for summary judgment regarding SpiceJet's breach of the lease agreements in the High Court of Justice, King's Bench Division, Business and Property Courts of England and Wales Commercial Court (the English High Court). In response, SpiceJet submitted arguments on some of the legal costs claimed by Alterna, indicated it did not intend

to respond to the rest of the summary judgment motion, and requested a three-month stay of execution of any judgment. Under the English High Court's Civil Procedure Rule 24.2, the court can properly grant summary judgment where it concludes:

> (a) (i) that claimant has no real prospect of succeeding on the claim, defence or issue, or (ii) that defendant has no real prospect of successfully defending the claim or issue; and (b) there is no other compelling reason why the case or issue should be disposed of at a trial.

Applying that standard, the court made detailed written findings and determined SpiceJet had an obligation to pay Alterna and had failed to do so. The court granted Alterna's motion and ordered SpiceJet to pay Alterna in excess of $11M under the lease agreements plus litigation costs and interest.

In 2023, Alterna filed the Petition in the trial court below seeking recognition of the foreign judgment under the Uniform Act. SpiceJet filed a motion to dismiss for lack of personal jurisdiction under CR 12(b)(2).[1] After hearing argument from both parties, the trial court ruled as follows:

> *Lenchyshyn versus Pelko Electric*, [281 A.D.2d 42, 723 N.Y.S.2d 285 (N.Y. App. Div. 2001),] which is a federal case out of New York, I think, really sums up the state of the case law on this point, which is that this is not a situation where this is a novel or new lawsuit. This is simply porting over a judgment from one jurisdiction to another, a situation that arises on a regular basis, and a situation that there is an entire uniform code that's been developed to facilitate such enforcement actions in other jurisdictions.
>
> And in that case, the court explained, I think rather logically, that—that it doesn't make sense to quibble about whether there are assets currently here, especially in the case of personal property, which is obviously not tied to any one particular geography and is moveable, that such a judgment should not necessarily be tied to a

---

[1] SpiceJet also moved to dismiss under CR 12(b)(4) for insufficient service of process, but it does not raise any arguments related to that motion in this appeal.

current existence of personal property.

So for that reason, it seems as if fairness and practicality does dictate a finding of jurisdiction in this case.

The court then entered a written order incorporating its oral ruling and denying SpiceJet's motion to dismiss.

In addition to responding to SpiceJet's motion to dismiss, Alterna filed a motion for summary judgment seeking recognition of the Foreign Judgment. In response to Alterna's motion, SpiceJet filed a "Notice Relating to Petitioner's Motion for Summary Judgment," stating that it would not submit any filing in response to Alterna's summary judgment motion and would instead rely solely on its defense of lack of personal jurisdiction. The trial court granted Alterna's motion and entered an order and final judgment recognizing the Foreign Judgment. This timely appeal followed.

II

SpiceJet argues the trial court erred in denying its motion to dismiss for lack of personal jurisdiction under CR 12(b)(2).[2] That is so, SpiceJet argues, because Alterna was required to establish a basis for the exercise of personal jurisdiction over SpiceJet in this recognition action under the Uniform Act—such as the current existence of personal property in Washington—and failed to do so. But as explained below, neither the plain language of the Uniform Act nor case law

---

[2] Traditionally, territorial jurisdiction had three categories: in personam, in rem, and quasi in rem. These terms, however, "have only modest analytic utility in modern context. This is because the specific distinctions between them as bases of jurisdiction have to a large extent been obliterated." RESTATEMENT (SECOND) OF JUDGMENTS § 5 cmt. b (AM. L. INST. 1982). In the modern context, "[j]urisdiction in personam, in rem, and quasi in rem are forms of personal jurisdiction." RESTATEMENT (FOURTH) FOREIGN RELATIONS LAW OF THE UNITED STATES § 422, cmt. a (2018). Therefore, this opinion generally refers to "personal jurisdiction" instead of the traditional categories.

interpreting and applying the Act require a judgment creditor to show a basis for the exercise of personal jurisdiction over a judgment debtor before obtaining recognition of a foreign country money judgment. Accordingly, the trial court correctly denied SpiceJet's motion to dismiss for lack of personal jurisdiction.

A

CR 12(b)(2) governs motions to dismiss for lack of personal jurisdiction. In *State v. LG Elecs., Inc.*, 186 Wn.2d 169, 375 P.3d 1035 (2016), our Supreme Court provided substantial guidance in deciding such motions. The court noted, "When a motion to dismiss for lack of personal jurisdiction is resolved without an evidentiary hearing, the plaintiff's burden is only that of a prima facie showing of jurisdiction." *Id.* at 176 (citing *MBM Fisheries, Inc. v. Bollinger Mach. Shop & Shipyard, Inc.*, 60 Wn. App. 414, 418, 804 P.2d 627 (1991)). Addressing the applicable standard of review, the court stated, "We review CR 12(b)(2) dismissals for lack of personal jurisdiction de novo." *Id.* (citing *FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 180 Wn.2d 954, 963, 331 P.3d 29 (2014)). Lastly, *LG Electronics* also confirms that, in deciding a motion to dismiss, the allegations of a complaint must be accepted as true. *Id.* at 185.

The Uniform Act, in turn, governs recognition of foreign country money judgments in Washington. RCW 6.40A.030. When, as here, an appeal concerns the interpretation of a statute, we review the trial court's decision de novo. *Bennett v. Seattle Mental Health,* 166 Wn. App. 477, 483, 269 P.3d 1079 (2012) ("interpretation and meaning of a statute is a question of law subject to de novo review"). "The goal of statutory interpretation is to discern and carry out legislative

intent." *Id.* "Absent ambiguity, a statute's meaning is derived from the language of the statute and we must give effect to that plain meaning as an expression of legislative intent." *Id.* at 484. Additionally, "'Common sense informs our analysis, as we avoid absurd results in statutory interpretation.'" *Linville v. Dep't of Ret. Sys.*, 11 Wn. App. 2d 316, 321, 452 P.3d 1269 (2019) (quoting *State v. Alvarado*, 164 Wn.2d 556, 562, 192 P.3d 345 (2008)).

The National Conference of Commissioners on Uniform Laws and the American Bar Association approved the Uniform Act in 1962. The Act codified long held legal principles applied by the majority of courts in the United States. RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW pt. IV introductory note at 230 (AM. L. INST. 1987). The Prefatory Note to the uniform draft includes the following reasons for adopting this legislation:

> In most states of the Union, the law on recognition of judgments from foreign countries is not codified. In a large number of civil law countries, grant of conclusive effect to money-judgments from foreign courts is made dependent upon reciprocity. Judgments rendered in the United States have in many instances been refused recognition abroad either because the foreign court was not satisfied that local judgments would be recognized in the American jurisdiction involved or because no certification of existence of reciprocity could be obtained from the foreign government in countries where existence of reciprocity must be certified to the courts by the government. Codification by a state of its rules on the recognition of money-judgments rendered in a foreign court will make it more likely that judgments rendered in the state will be recognized abroad.

UNIF. FOREIGN MONEY–JUDGMENTS RECOGNITION ACT (1962) prefatory note, § 4, 13 pt. 1 U.L.A. 489, 490, 517-18 (2022). In 2005, the Commissioners on Uniform Laws promulgated a revision to the Uniform Act, noting the increase in international trade and international litigation and stating, "there is a strong need for uniformity

between states with respect to the law governing foreign country money-judgments." Uniform Laws, Summary, 2005 Foreign-Country Money Judgments Recognition Act.

Washington adopted the Uniform Act in 1975 and the revised Uniform Act in 2009. LAWS OF 1975, ch. 240 § 1-12; LAWS OF 2009, ch. 363 § 1-12. The Act authorizes state courts to recognize foreign country money judgments that are final, conclusive, and enforceable under the law of the country where rendered. RCW 6.40A.020(1). In such circumstances, the statute provides that a court "shall recognize a foreign-country judgment" except where there are grounds for nonrecognition. RCW 6.40A.030(1). As a general rule, the word "shall" is "presumptively imperative and operates to create a duty rather than conferring discretion." *State v. Bartholomew*, 104 Wn.2d 844, 848, 710 P.2d 196 (1985).

Subsections (2) and (3) of RCW 6.40A.030 provide mandatory and discretionary grounds for nonrecognition, respectively. Subsection (2) provides:

> A court of this state may not recognize a foreign-country judgment if:
>     (a) The judgment was rendered under a judicial system that does not provide impartial tribunals or procedures compatible with the requirements of due process of law;
>     (b) The foreign court did not have personal jurisdiction over the defendant; or
>     (c) The foreign court did not have jurisdiction over the subject matter.

RCW 6.40A.030(2). Subsection (3), in turn, states:

> A court of this state need not recognize a foreign-country judgment if:
>     (a) The defendant in the proceeding in the foreign court did not receive notice of the proceeding in sufficient time to enable the defendant to defend;
>     (b) The judgment was obtained by fraud that deprived the losing party of an adequate opportunity to present its case;

(c) The judgment or the cause of action on which the judgment is based is repugnant to the public policy of this state or of the United States;

(d) The judgment conflicts with another final and conclusive judgment;

(e) The proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be determined otherwise than by proceedings in that foreign court;

(f) In the case of jurisdiction based only on personal service, the foreign court was a seriously inconvenient forum for the trial of the action;

(g) The judgment was rendered in circumstances that raise substantial doubt about the integrity of the rendering court with respect to the judgment; or

(h) The specific proceeding in the foreign court leading to the judgment was not compatible with the requirements of due process of law.

RCW 6.40A.030(3). Lastly, subsection (4) of RCW 6.40A.030 states that a party "resisting recognition of a foreign-country judgment has the burden of establishing that a ground for nonrecognition stated in subsection (2) or (3) of this section exists." RCW 6.40A.030(4).

SpiceJet has not asserted that any of the grounds for nonrecognition under Washington law exist here. Thus, there is no dispute that the Foreign Judgment was rendered under a judicial system that provides impartial tribunals and procedures compatible with the requirements of due process of law, that the English High Court had personal jurisdiction over SpiceJet and jurisdiction over the subject matter of the parties' dispute, and that the Foreign Judgment was fairly obtained. RCW 6.40A.030(2), (3). Instead, the issue is whether Alterna must also show a basis for the exercise of personal jurisdiction over SpiceJet in the *recognizing forum* before it may properly seek recognition of the Foreign Judgment under the Uniform Act.

No appellate court in Washington has squarely addressed the above issue. In such circumstances, the Washington Legislature has directed courts to look to decisions in other jurisdictions interpreting the Uniform Act. Specifically, RCW 6.40A.900 provides, "[i]n applying and construing this uniform act, consideration must be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it." There are, by recent count, 37 other states that have adopted a version of the Uniform Act. *See* Foreign-Country Money Judgments Recognition Act - Uniform Law Commission (uniformlaws.org) (listing states that have adopted a version of the Uniform Act). In addition to *Lenchyshyn*, which the trial court cited and relied on below, two cases decided by appellate courts in other states that have adopted a version of the Uniform Act are particularly instructive here.

The first such case is *Abu Dhabi Commercial Bank PJSC v. Saad Trading, Contracting & Fin. Servs. Co.*, 117 A.D.3d 609 (N.Y. App. Div. 2014) (*Abu Dhabi*), which was decided by the same court that decided *Lenchyshyn*. The defendant in *Abu Dhabi* argued that the trial court could not properly recognize a foreign country money judgment unless the petitioner could establish personal jurisdiction. Similar to the circumstances here, the court in *Abu Dhabi* noted:

> In the present action, defendant has actual notice of the enforcement action and does not argue that the English judgment fails to meet the requirements of CPLR 5303[3] or that any grounds for nonrecognition of a foreign country money judgment exist. Nor does defendant provide a reason why the judgment should not be recognized as a matter of substance.

---

[3] CPLR article 53 is New York's version of the Uniform Foreign Country Money Judgments Recognition Act. *See* CPLR 5308, 5309.

*Id*. at 611.  Then, relying heavily on its prior opinion in *Lenchyshyn*, the court

rejected the defendant's jurisdiction argument as follows:

> Under these circumstances, "a party seeking recognition in New York of a foreign money judgment (whether of a sister state or a foreign country) need not establish a basis for the exercise of personal jurisdiction over the judgment debtor by the New York courts," because "[n]o such requirement can be found in the CPLR, and none inheres in the Due Process Clause of the United States Constitution, from which jurisdictional basis requirements derive" (*see Lenchyshyn*, 281 AD2d at 47; *see also Haaksman v Diamond Offshore [Bermuda], Ltd.*, 260 SW3d 476, 480 [Tex App 2008]; *Pure Fishing, Inc. v Silver Star Co., Ltd.*, 202 F Supp 2d 905 [ND Iowa 2002]). Although CPLR 5304 (a) provides that the trial court may refuse recognition of the foreign country judgment if the foreign country court did not have personal jurisdiction over the judgment debtor, it does not provide for nonrecognition on the ground that the New York court lacks personal jurisdiction over the judgment debtor in a CPLR article 53 proceeding.

*Id.*  The court then turned to the defendant's argument that the petitioner must, at

the very least, show that the judgment debtor has property in the forum state and

rejected that argument as well:

> Nor does the CPLR require the judgment debtor to maintain property in New York for New York to recognize a foreign money judgment. While CPLR 5304 provides a list of specific reasons why the trial court may refuse recognition of the foreign country judgment, the lack of property in the state is not one of them.  Thus, "even if defendant [] do[es] not presently have assets in New York, plaintiff[ ] nevertheless should be granted recognition of the foreign country money judgment pursuant to CPLR article 53, and thereby should have the opportunity to pursue all such enforcement steps in future, whenever it might appear that defendant[ ] [is] maintaining assets in New York, including at any time during the initial life of the domesticated [English] money judgment or any subsequent renewal period." (*Lenchyshyn*, 281 AD2d at 50).

*Id.* at 612.  Thus, while a judgment creditor must show that the judgment debtor

has property in the forum state to *enforce* a judgment *after* it has been duly

recognized, *Abu Dhabi* squarely holds it is not necessary to show any such basis

for the exercise of personal jurisdiction in a *recognition* action under the Uniform Act.

The other case that is especially instructive here is *Haaksman v. Diamond Offshore (Bermuda), Ltd.*, 260 S.W.3d 476 (Tex. App. 2008). There, as in *Abu Dhabi*, the court carefully distinguished between *recognition* and *enforcement* of a foreign country money judgment. Addressing the purported absence of property in the forum state, the court held, "even if a judgment debtor does not currently have property in Texas, a judgment creditor should be allowed the opportunity to obtain recognition of his foreign-money judgment and later pursue enforcement if or when the judgment debtor appears to be maintaining assets in Texas." *Id.* at 481. *Haaksman*, like *Abu Dhabi*, thus confirms that the Uniform Act does not require property in the forum state to recognize a foreign country money judgment.

The United States Constitution also does not require property in the forum state in a recognition action. The United States Supreme Court addressed that issue in *Shaffer v. Heitner*, 433 U.S. 186, 97 S. Ct. 2569 (1977), where it stated:

> Once it has been determined by a court of competent jurisdiction that the defendant is a debtor of the plaintiff, there would seem to be no unfairness in allowing an action to realize on that debt in a State where the defendant has property, whether or not that State would have jurisdiction to determine the existence of the debt as an original matter.

*Id.* at 210 n.36. While *Shaffer* requires minimum contacts between the defendant and the forum in the action that determines the defendant's liability to the plaintiff (*id.* at 207-12), it does not require a judgment creditor to show a basis for the exercise of personal jurisdiction over a judgment debtor in a recognition action.

Numerous courts have recognized this point. Addressing the significance of the *Shaffer* footnote (quoted above), the court in *Lenchyshyn* noted: "Those courts that have cited the *Shaffer* footnote have held uniformly that no jurisdictional basis for proceeding against the judgment debtor need be shown before a foreign judgment will be recognized or enforced in a given state." 281 A.D.2d at 48 (citing 18 cases so holding). In *Abu Dhabi*, the court explained:

> [S]ince CPLR article 53 and the English court are already protecting the defendant's due process rights, including personal jurisdiction, the court charged with recognition and enforcement should not be required to grant further protection during a ministerial enforcement action (*see Lenchyshyn*, 281 AD2d at 49). There is no unfairness to the defendant if the plaintiff obtains an order in New York recognizing the foreign judgment, which can then be enforced if the defendant is found to have, or later brings, property into the State (*Lenchyshyn* at 50).

117 A.D.3d at 613. Thus, while personal jurisdiction is required to establish the underlying liability in the originating forum (conceded here), it is not required to recognize the judgment on that established liability in the recognizing forum.[4]

This rule—that it is not necessary to establish a basis for the exercise of personal jurisdiction over a judgment debtor in a foreign country money judgment recognition action—also makes practical sense. The Court in *Shaffer* explained that a judgment debtor, like SpiceJet, "should not be able to avoid payment of his obligations by the expedient of removing his assets to a place where he is not subject to an in personam suit." 433 U.S. at 210 (quoting *Restatement (Second)*

---

[4] *Accord Koh v. Inno-Pac. Holdings, Ltd.,* 114 Wn. App. 268, 269, 54 P.3d 1270 (2002) ("once it has been determined by a court of competent jurisdiction that a defendant is a debtor of the plaintiff, an action to realize on that debt in Washington, where the defendant has a property interest in a limited liability company, is proper whether or not Washington would have had jurisdiction to determine the existence of the debt as an original matter").

*of Conflict of Laws* § 66 cmt. a (AM. L. INST. 1971). A leading law review article similarly explains, "Practical considerations lay behind the preservation of quasi-in-rem jurisdiction for recognition and enforcement actions—debtors could easily frustrate satisfaction of judgments and awards if they could shield assets simply by placing them where they were not subject to personal jurisdiction." Linda J. Silberman & Aaron D. Simowitz, *Recognition and Enforcement of Foreign Judgments and Awards: What Hath Daimler Wrought*, 91 N.Y.U. L. REV. 344, 390 (May 2016). The trial court also recognized this issue, noting, "it doesn't make sense to quibble about whether there are assets currently [in Washington], especially in the case of personal property, which is obviously not tied to any one particular geography and is moveable." SpiceJet's jurisdiction argument ignores these practical considerations and, if accepted, would allow judgment debtors to avoid recognition of a valid foreign country money judgment under the Uniform Act simply by moving property to another state. Our holding here avoids that absurd result. *See Linville*, 11 Wn. App. 2d at 321 (cited and quoted above).

B

While SpiceJet claims that substantial precedent supports its jurisdiction argument, the cases it relies on are inapposite. First, SpiceJet relies on enforcement cases, thereby conflating recognition actions with enforcement actions. Enforcement actions in Washington are governed by the Uniform Enforcement of Foreign Judgments Act, ch. 6.36 RCW, not by the Uniform Act at issue here. The Restatement (Third) of Foreign Relations Law § 481 cmt. h (1987) summarizes enforcement actions as follows:

> [A]n action to enforce a judgment may usually be brought wherever property of the defendant is found, without any necessary connection between the underlying action and the property, or between the defendant and the forum. The rationale behind wider jurisdiction in enforcement of judgments is that once a judgment has been rendered in a forum having jurisdiction, the prevailing party is entitled to have it satisfied out of the judgment debtor's assets wherever they may be located.

The court in *Lenchyshyn* similarly stated, "even if defendants do not presently have assets in New York, plaintiffs nevertheless should be granted recognition of the foreign country money judgment pursuant to CPLR article 53, and thereby should have the opportunity to pursue all such enforcement steps *in futuro,* whenever it might appear that defendants are maintaining assets in New York." 281 A.D.2d at 50. At present, the sole issue before us is recognition of the Foreign Judgment, which does not require that SpiceJet possess personal property in Washington.

Consistent with the foregoing discussion, the cases cited by SpiceJet merely acknowledge that there must be personal property in the recognizing forum to *enforce* a foreign country money judgment. SpiceJet's key case, *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1127-28 (9th Cir. 2002)*,* held that Glencore Grain could not enforce the award at issue because it had not identified any assets in the forum. At the same time, the court noted that Glencore Grain could "of course" seek enforcement "in the future if it discovers property in the forum." *Id.* at 1128 n.9. In *Electrolines, Inc. v. Prudential Assurance Co.*, 677 N.W.2d 874, 882 (Mich. App. 2003), the court again differentiated between recognition and enforcement actions, explaining, "key to our resolution of this appeal is the understanding that a foreign country money judgment cannot be enforced until it has been recognized and that [Michigan's Uniform Recognition

- 14 -

Act] is not an enforcement Act."  Similarly, in *JPMorgan Chase Bank, N.A. v. Herman*, 168 A.3d 514, 520 (Conn. App. 2017), the court held that an enforcement action may proceed if the judgment debtor has property in the forum state. Because Alterna does not seek enforcement in the action before us, SpiceJet's enforcement cases are inapposite.

Second, SpiceJet cites cases analyzing recognition of foreign arbitral awards.  *See Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 397 (2d Cir. 2009); *First INV. Corp. of Marshall Islands v. Fujian Mawei Shipbuilding, Ltd.*, 703 F.3d 742, 749 (5th Cir. 2013); *Simplot India UC v. Himalaya Food Int'l Ltd.*, 2024 WL 1136791, at \*11-12 (D.N.J. Mar. 15, 2024) (citing arbitration cases).  These cases are governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards under chapter II of the Federal Arbitration Act, not the Uniform Foreign Money Judgments Recognition Act adopted in Washington and applicable here.  Additionally, whereas a foreign country money judgment is a *judicial* decree of a foreign government, an unconfirmed arbitral award is a *contractual* decree and has the force and effect of a judgment only if and after it is confirmed by court order.  *See* RCW 7.04A.250(1). Given these significant distinctions, cases regarding foreign arbitral awards, like enforcement cases, do not control the personal jurisdiction issue in this case.

III

Because Alterna was not required to establish a basis for the exercise of personal jurisdiction over SpiceJet to seek recognition of the Foreign Judgment

No. 86016-0-1

under the Uniform Act, the trial court did not err in denying SpiceJet's motion to dismiss for lack of personal jurisdiction.[5]  Accordingly, we affirm.

Feldman, J.

WE CONCUR:

Chung, J.

Smith, C.J.

---

[5] Alterna also argues, in the alternative, that even if it was required to establish a basis for the exercise of personal jurisdiction over SpiceJet to seek recognition of the Foreign Judgment under the Uniform Act, it did so by alleging in its Petition that "[t]his Court has jurisdiction for this action, if and to the extent required, *inter alia* because SpiceJet owns cognizable interests in personal property located in King County, Washington, that can be applied to satisfy the foreign-country money judgment described herein."  Under *LG Electronics*, this allegation must be accepted as true for purposes of deciding SpiceJet's motion to dismiss.  186 Wn.2d at 185.  Nonetheless, we need not address this issue because, as discussed in the text above, the trial court correctly concluded that Alterna was not required to establish such a basis for the exercise of personal jurisdiction to obtain recognition of the Foreign Judgment under the Uniform Act.